SAVOIE, Judge.
Plaintiff, Linda Polit, wife of and Douglas J. McIntosh, appeal the jury’s denial of their claims for reimbursement of property damage allegedly caused by defendant’s, United Geophysical Corporation’s (hereinafter referred to as UGC) geophysical activity.
Prior to December, 1980, UGC contracted with the State of Louisiana, Department of Culture, Recreation and Tourism (hereinafter referred to as State) to conduct certain geophysical activity in the Fountain-bleau State Park. During December, 1980, UGC set off approximately thirty-forty subsurface dynamite explosions. Each explosion consisted of a twenty-five pound dynamite charge set at a depth of 125 feet. The charges were located 440 feet apart and along pre-set and charted lines.
On December 8 and 19, 1980, UGC detonated certain charges which allegedly caused plaintiffs’ injuries. Immediately after the explosions on each date, plaintiffs contacted representatives of UGC to advise them of the damage allegedly incurred, requesting that all further geophysical activity be curtailed. Plaintiffs subsequently sought reimbursement from their homeowner’s insurance, State Farm Fire & Casualty Company (hereinafter referred to as State Farm) for the damage allegedly sustained. After their claim was denied, plaintiffs filed suit against the State, UGC, and State Farm.
In their suit, plaintiffs contended that UGC and the State were liable for the damages sustained by reason of their negligent actions whereas State Farm was liable for its failure to pay under the terms of the policy. UGC sought removal of the claim to federal district court and subsequently filed a general denial. State Farm generally denied plaintiffs’ claims and filed a motion to consolidate the claims of Pandora Seferobich, wife of/and Louis Norbert Martin (Suit No. 65,116, Twenty-Second Judicial District Court) with the instant case. Therein, State Farm asserted that both suits arose out of the same set of facts and circumstances and involved the same de *746 fendants. Although opposed; the suits were consolidated by judgment dated August 3, 1981. UGC then sought and received a stay of all federal proceedings and a remand of this suit back to state court. Thereafter, the State generally denied plaintiffs’ claims, alternatively filing a third-party demand against UGC. Therein, it sought reimbursement for any funds it would be required to pay plaintiffs. UGC generally denied such demand.
State Farm, seeking deletion of plaintiffs’ claim for mental anguish, inconvenience and emotional distress, filed a motion for partial summary judgment in connection therewith. Therein, it claimed that such damages were excluded by the policy’s terms. After a hearing on same, the trial court granted the motion for partial summary judgment and deleted said items of damage from plaintiffs’ petition. State Farm then filed a petition of intervention and cross-claim against UGC. Such claim was generally denied. Thereafter, plaintiffs amended their petition to assert that State Farm had arbitrarily and capriciously failed to pay under the policy’s terms. State Farm generally denied such assertion.
After trial, judgment was rendered in favor of defendants (UGC, the State and State Farm) on the principal demand. All third-party claims, interventions and cross-claims were dismissed with prejudice.
Plaintiffs’ motion for new trial being denied, they appeal contending that the jury erred in finding that UGC’s activity was neither a cause-in-fact or proximate cause of the damages allegedly sustained in view of the evidence adduced. Secondly, they contend that the trial court erred in denying their motion for a new trial.
It is settled that for a plaintiff to recover in negligence, he must prove that: (1) the act complained of was the cause-in-fact of the accident, (2) defendant had a duty, either statutory or non-statutory, to protect this plaintiff against the cause of harm complained of, (3) defendant breached his duty to protect plaintiff, and (4) plaintiff was harmed by this breach of the duty owed. Wooten v. Louisiana Power & Light Company, 477 So.2d 1142 (La.App. 1st Cir.1985); and Brady on Behalf of Brady v. Rivella Developers, Inc., 424 So.2d 1104 (La.App. 1st Cir.1982). The threshold issue in this duty-risk analysis is whether the act complained of is the cause-in-fact of the accident. See Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985). Such issue is one of fact; the jury’s finding thereon being entitled to great weight and will not be disturbed on appeal absent manifest error. Bordelon v. Southern Louisiana Health Care Corporation, 467 So.2d 167 (La.App.3rd.Cir.), writ denied, 469 So.2d 989 (La.1985).
The record reflects the testimony of numerous lay persons and experts. Ms. Polit testified that she and her former husband, Mr. McIntosh, purchased the home in 1965. At that time it was a small one-bedroom home. Subsequent to their purchase, two additions were built on the home as needed with her husband acting as general contractor. On December 8, 1980, around lunchtime, she stated that she heard noises similar to firecrackers going off. She contended she felt the ground rumbling, her windows shaking, and pictures on the walls were tilted. Immediately thereafter, she contacted UGC’s local representative to complain thereof. Again on December 19, 1980, she felt and heard further blasting. On that occasion, she claims that a dish fell from her fireplace mantel. Immediately thereafter, she testified that she discovered cracks in the brick veneer of their home. A few days later she discovered cracks in the home’s slab, she contends were not present prior to December 8 or 19, 1980.
Ms. Debra Stevens, Marlene Guerett Harveston, Pasha Cain, and Pandora S. Martin, friends of Ms. Polit, were present on December 19, 1980, at the time of the alleged blastings. They basically affirmed Ms. Polit’s testimony with respect to the ground rumbling, rattling windows, and the dish breaking.
Mr. McIntosh testified that prior to December of 1980, he noticed no cracks in the home’s slab or its brick veneer. When *747 questioned as to whether he was now experiencing problems in the home due to the cracks in the slab, he replied negatively. He further explained that the cracked slab was carpeted approximately two years after being poured, that being over eleven years prior to the blasting. It has remained carpeted until just after the December 19, 1980 blasting. As a result of a cracking feeling underfoot, the carpet was rolled back to discover the cracks in the slab. Mr. Randall Wire, plaintiffs’ family friend, confirmed that prior to the carpet being laid, the slab contained no cracks.
Mr. Harold Myers, accepted as an expert engineer with expertise in determining whether explosions can cause certain damages and the effect of moisture or lack thereof on slabs and foundations, opined that the cracks in plaintiffs’ home were not caused by the seismographic explosions conducted by UGC. He testified that such explosions cause cracks to run at 45 degree angles to the earth on vertical surfaces. He stated that his examination of plaintiffs’ home revealed that such were not present here but that they were typically vertical cracks on such surfaces. Noting that 1980 and 1981 were unusually dry years and that certain soils shrink when they dry out, he opined that the cracks complained of were thermal expansion and settlement cracks possibly caused by such shrinking process. He further testified that based upon the information given him regarding the distance from, depth of, and size of dynamite charge used, plaintiffs’ damages could have possibly been caused thereby.
Mr. Edward R. Morphy and Herbert C. Sanders, accepted as experts in civil engineering, testified that the cracks they viewed were of a recent nature and appeared to be caused by something other than settlement. Mr. Morphy stated they were caused by induced force. However, when asked whether he could state with any reasonable probability that the explosions caused said cracks, he replied negatively.
Mr. Cy Talabrock, accepted as an expert in general contracting testified that the brick veneer cracks did not appear to be of a recent nature. He found some to contain moss. Based on his experience in this area, he stated that most cracks of this nature were the result of settlement and poor workmanship.
Mr. Richard Seward, accepted as an expert in construction, testified that he observed certain defects in the construction and techniques employed by plaintiffs in the home’s additions. He first noted that the additions had only a twelve inch depth on the footings with a four inch slab. Secondly, he found that the roofing supports were inadequate, putting excessive stress on the outside walls. He opined that such stress could possibly cause cracks in the home’s brick veneer.
Lastly, Mr. John Simmonce, accepted as an expert in the effects of blast vibrations, testified that based upon the stated size of the dynamite charges used and their depth, to cause even minor damage to the home, the charge would have to have been within 300 feet thereof. The record indicates that each charge contained twenty-five pounds of dynamite and was,set at a subsurface depth of 125 feet. On December 8, 1980, the closest charge to plaintiffs’ home was located some 1600 feet therefrom while on December 19, 1980, it was located some 9300 feet away. Mr. Simmonce stated that to cause such damages at the distances and depth given, the December 8, 1980 charge would have to have contained 706.2 pounds of dynamite and the December 19, 1980 charge 23,859.6 pounds thereof.
We find from the summarized testimony above that there are conflicting views as to the cause of the damages claimed herein. As such, the cause of damage is a question of fact to be determined by the trier thereof. Further, the jury was able to hear and observe the demeanor of all of the witnesses. When reviewing the trier of fact’s findings and reasonable evaluations of the witnesses’ credibility, same should not be disturbed on appeal absent manifest error. *748 Anderson v. Rabb, 484 So.2d 196 (La.App. 1st Cir.1986).
Based upon the testimony summarized above and the entire record, we cannot say that the jury’s findings were manifestly erroneous. Accordingly, this assignment of error is without merit.
Plaintiffs next assert that the trial court erred in denying their motion for a new trial. The court in its sole discretion may grant a new trial if there is good reason shown therefore. LSA-C.C.P. art. 1973. Such discretion will not be reversed on appeal unless an abuse of that discretion is established. Lytell v. Goodyear Tire & Rubber Company, 439 So.2d 542 (La.App. 1st Cir.1983). Plaintiffs contend only that the evidence is clear that the December, 1980, blastings by UGC caused the damages complained of.
Based upon the entire record and evidence cited herein, we find that the trial court did not abuse its discretion in denying plaintiffs’ motion. This assignment of error is without merit.
For the above and foregoing reasons, judgment of the trial court is hereby affirmed. Plaintiffs, Linda Polit, wife of, and Douglas J. McIntosh, are to pay all costs.
AFFIRMED.